And our last case this morning is Lambert v. Berryhill. Ms. Marcus. May it please the court, Meredith Marcus on behalf of Appellant Paul Lambert. In this case, the Administrative Law Judge erred in offering considerable weight to this non-examining, non-treating state agency doctor, Dr. Janice Burr, because between when her opinion was issued and when the Administrative Law Judge issued his decision, a significant amount of evidence was entered into the record, namely any and all treatment related to the sacroiliac joints, any and all treatment related to pain management and the surgery by a treater and surgeon, Dr. Kamaljit Paul, and the two lifting assessments that were completed. And we know this by looking at the record at page 104, Dr. Burr's assessment in supporting the residual functional capacity for sedentary work describes the chronic back pain. And this court has now held in numerous cases and staged in Goins and most recently in Marino that an Administrative Law Judge should not rely on an outdated assessment if later evidence containing new and significant medical diagnoses could reasonably have changed the reviewing physician's opinion. Next in this case, we have the two assessments by Dr. Paul. We have the one in March of 2014 and then the latter one of August of 2014. And the one in March of 2014, the Administrative Law Judge errs there in stating that he's affording it significant weight. However, he goes through the assessment and states that he's not going to adopt the four job absences, but the remainder of the opinion he states is consistent with the record and that he's going to adopt it. But the judge leaves out two specific limitations, that every 60 minutes, Mr. Lambert's going to need periods of walking around for five minutes, and that for two times a week, he's going to need unscheduled breaks for 15 minutes where he either needs to sit quietly or lie down. So there, the judge has failed to build an accurate and logical bridge between the evidence and result. With respect to the August 2014 opinion, the judge errs there in substituting his own speculation for the evidence of record. There he states that there's no objective evidence as to ongoing pain complaints and that the current pain is temporary and won't respond to conservative, there's no evidence that the pain's only temporary and wouldn't respond to conservative treatment. But if we look at the record and what we have from Mr. Lambert's amended onset date, his treatment didn't respond to conservative care. We have two surgeries during the relevant period. And with respect to the contemporaneous evidence with when Dr. Paul offered that August 2014 assessment, we have Dr. Paul's own assessment that Mr. Lambert is not going to improve, that his prognosis is poor. We have an x-ray at the record at 8-72 that Dr. Paul reviews and states that there's now degeneration of the disc above where he had the lumbar surgery that's explaining some of the symptoms. We have Dr. Paul around the same time that he's offered this assessment, sending Mr. Lambert back to his pain management specialist to start doing pain management treatment again. So there certainly is objective evidence in the record contemporaneous with Dr. Paul's assessment to support his limitations, including the more recent lifting assessment that's putting Mr. Lambert at low to sedentary. Counsel, plaintiff Lambert had his first back surgery in 2004, is that right? Correct. How many operations in total since then? So he had, in 2004 and 2007, he had back surgeries, two back surgeries. And then by 2011, that's when he alleged his original onset date, and he went to see Dr. Joseph to try and figure out why he was having what he thought was the back problems. Dr. Joseph sent him to Dr. Paul, who I believe at the record at 595 states there's no objective testing for sacroiliac problems, but he thinks it might be that. So he's going to try and do injections, and at that point in October of 2013 and then April of 2014, Mr. Lambert then had surgery to both sacroiliac joints. Both, okay. Yep. And Dr. Paul, at the risk of summarizing, said in essence there's not a whole lot more we can do for you. Correct. And that, I should say, that's after the most recent surgery. There was a period of time in January of 2014 that Dr. Paul releases him after the first hip surgery, and Mr. Lambert explains at the hearing, you know, I was trying to walk, I was trying to rehabilitate myself, but by February of 2014, he goes back to Dr. Paul and says, I'm starting to have problems in my right hip now, and at that point he's sent back to pain management and then undergoes another sacroiliac procedure. Well, how many did he have ultimately with these procedures? I mean, he had two, you call it fusion? Yeah, he had a sacroiliac fusion to both sides. Yeah, and then there was something about the tailbone, I wasn't quite sure. So there's overlapping issues in this case because initially it was the back problem. He was having what they diagnosed as failed back syndrome, but then during the course of treatment, it's determined that he's having the sacroiliac problems as well, so that's treated. And then towards the end of the course of treatment, he's complaining of pain above where he had the sacroiliac surgery on the left side, and Dr. Paul reviews a more recent x-ray and says he thinks that the pain's coming from the degeneration above where he had the lumbar spine surgery back in 2007. Can I ask you to go back to Dr. Paul's assessment where the ALJ gives little weight to the opinion that Mr. Lambert would need to miss four days per month because it's not consistent with the objective evidence and claimant's own reported activities. Could you address that rationale? I take it if you're off four days a week, four days a month rather, you're disabled? Correct, Your Honor. Okay, so could you address those rationales? I'm assuming, well, in terms of the daily activities, if you look at the daily activities, it's poor rationale because the judge in his credibility assessment states that Mr. Lambert is reporting fairly limited daily activities, and then there's nothing in the record to contradict the fairly limited daily activities. If you look at the functional reports that Mr. Lambert's written, he's explaining them, and in his testimony, he's stating that he's doing fairly limited activities. In terms of the record, we don't have any evidence of job absences because he wasn't working at the time, but we certainly have multiple visits to Dr. Paul and Dr. Joseph every month reporting pain complaints. With respect to the daily activities and the credibility assessment, though, turning to that, the judge states that he's not going to give as much weight to Mr. Lambert's testimony as to daily activities, and he points to a March 2014 record where Mr. Lambert's reportedly reporting that the sacroiliac surgery was excellent, and that's the judge's rationale for his credibility assessment pertaining to daily activities. And we argued in the briefs that the judge here errs as he's cherry-picking this one note, but in reality, a month later, Mr. Lambert then went for a sacroiliac surgery to the right side, and thereafter had the lifting assessment that supported that he couldn't perform any type of work. With respect to the credibility assessment as well, I wanted to point to the fact that the Administrative Law Judge erred in considering Mr. Lambert's receipt of unemployment benefits. There's no wrongdoing in the Administrative Law Judge considering unemployment, but in this case, the judge asked Mr. Lambert about unemployment. He explains at the hearing that he had reached an agreement with his employer that they would let him file for unemployment and he wouldn't have to certify that he was ready, willing, and able to work. At the hearing, the judge then said that he found it adverse that someone would, against someone's credibility, that he would take unemployment and disability at the same time. He recommended that Mr. Lambert file or amend his onset date to avoid the issue that he saw in his mind between the receipt of unemployment and Social Security disability benefits. And then in the decision, the judge doesn't address any of the rationale that Mr. Lambert gave for the receipt of taking unemployment benefits. And he states that Mr. Lambert attempted to moot the issue by amending his onset date when the record seems clear that the judge had recommended it on his own accord. And I think this is contrary to the holdings program that the judge is supposed to look carefully at the issues as to why someone is to apply for disability benefits. Well, getting unemployment doesn't necessarily mean a disability. It means you've been laid off. Correct. So in this case, the judge said that if you're laid off and you file for unemployment, you need to certify that you're ready, willing, and able to work. So Mr. Lambert offered his explanation that he had worked out with his employer that they would put him on unemployment and he wouldn't have to look for a new job. However, in the judge's decision, he doesn't explain why he rejected Mr. Lambert's testimony as to why he had filed for unemployment, that he didn't certify that he was ready, willing, and able to work, and he further stated that Mr. Lambert attempted to moot this issue and he still held it adversely against Mr. Lambert's credibility. I thought Mr. Lambert kept trying to rehabilitate himself and see if he could go back to work. Yes, Your Honor. Right? Correct. I've got to say, I've wondered about there is a kind of legal tension between unemployment compensation and disability. I understand that, but when somebody doesn't know how they're going to be treated by either system, I don't see why it's unreasonable to try both parts of a safety net that way. Correct, Your Honor. Okay, thank you. Thank you. Thank you. Ms. Schwartz. May it please the Court, I'm Allison Schwartz, and I represent the Commissioner. Since this is where we left off, I'm just going to quickly jump in on the unemployment issue. The reason why the unemployment issue is on the table is because Mr. Lambert was collecting unemployment during the same period that he was alleging to be disabled, and that was a two-year period. And if you are telling the Social Security Administration that you are disabled, you are affirming to them that you're unable to work. So what Mr. Lambert was doing was telling the state of Wisconsin, on the one hand, that he was ready, willing, and able to come back to work, while, on the other hand, telling the Social Security Administration that he is physically unable to work. He was not actually collecting Social Security benefits or disability benefits during that period, was he? No, but he was collecting unemployment benefits during that period. But when you apply for Social Security benefits, you pick an alleged onset date, and that is the date you allege you became disabled. And in this case... And you may wait for five years before you get any benefits, right? That's true, but you still have to affirm during that period that you're unable to work. Now, I'm going to jump back and discuss the medical source opinions in this case. Mr. Lambert's counsel mentioned that the ALJ relied on a state agency doctor who issued an opinion before a good amount of the medical evidence was generated. Now, that's true, but the ALJ's residual functional capacity assessment is almost completely on all fours with Mr. Lambert's treating physician's opinion. And that's the March 2014 opinion that the treating physician, Mr. Paul, issued regarding Mr. Lambert's physical conditions. Now, in that opinion, Mr. Paul opined that Mr. Lambert could perform sedentary work, be off task 10 percent, use his cane, and shift positions every 15 minutes. The ALJ's RFC includes sedentary work with a cane, the same standing, sitting, and walking maximum limitations, and allowed him to be off task 10 percent of the workday. Now, the RFC did not include a sit-stand option. However, the vocational expert testified that even if a sit-stand option were included, Mr. Lambert would still be able to perform a significant number of jobs. Mr. Lambert's counsel had just mentioned that there were a couple limitations that the ALJ did not include from Mr. Paul's opinion. And one of them was that Mr. Paul opined that Mr. Lambert needed to get up every hour and walk around for five minutes. This March 2014 assessment by Dr. Paul that you're relying on and that the ALJ relied on was before the second sacroiliac surgery. That's correct, but the March... So it's no longer valid, or at least questionable validity. It is necessarily no longer valid because if you look at a functional capacity evaluation that was after the second surgery in July of 2014, that evaluation actually was for sedentary work with shifting positions. But Dr. Paul's opinion radically changed by August, end of July of 2014. Dr. Paul's opinion did change within the months preceding, but there was not a reason for Dr. Paul to change his opinion between the two periods at issue. Well, he had a second surgery and continued to experience pain. I understand that he had a second surgery, but the medical evidence shows that he recovered well from that surgery. But none of these surgeries have been successful in alleviating his pain. This is a failed surgery case. If you look at the evidence that's before the ALJ, the ALJ can only look at evidence that's before him, and this starts in January of 2013 and runs through July of 2014. Mr. Lambert needed to show that he was unable to work during a 12-month period. Now, if you look at the treatment Mr. Lambert had, after he had his first surgery, he said he felt great. He was walking. He was going to work out at the gym. Then his right-sided pain came back. He had surgery on his right side. After he had surgery on his right side and he went through a course of physical therapy, he was doing well. If you look at some of his statements to his physical therapist, he was walking a full mile before having to stop due to pain, and this was after the second surgery. On June 10th, he had no pain. He walked 1.8 miles. On June 24th, he walked for 2 miles. On June 26th, he walked for a mile without soreness. Then in July, the same day as his functional capacity assessment, he told the physical therapist that he had pain because he was riding his bike and he could walk for just over a mile before stopping due to pain. So, you know, Mr. Lambert has limitations, and the ALJ accommodated those by limiting him to a sedentary RFC with a cane with a 10% off-task amount of additional breaks. Is that common? I've never seen that. I've seen a lot of Social Security cases. I don't think I've seen that kind of a 10% off-task provision before. Well, in this case, the ALJ took that 10% off-task limitation from Dr. Paul's March 2014 opinion. And the vocational expert said no problem? That's correct. But Dr. Paul's later opinion, end of July of 2014, after the second surgery, said that he was limited to 15 minutes of sitting or standing at a time, needed to change positions frequently, could hardly lift five pounds, and there was a tremendously increased need for accommodations. And he also says that his functional capacity was reduced to the extent that he cannot do even sedentary work. So he's withdrawing his earlier opinion. But the ALJ doesn't have to take the withdrawal of his opinion at face value. The ALJ's job is to review Dr. Paul's subsequent opinions against the record and determine whether it's consistent with the record. And Dr. Paul suggested in his opinion that he was basing it on a July 2014 functional capacity evaluation. But that evaluation suggested that Mr. Lambert can work if he could shift positions every 15 minutes. Now, as I had mentioned before, that isn't included in the RFC, but it isn't work preclusive because the vocational expert testified that even if Mr. Lambert had to shift positions at will, he would still be able to work. So I'm going to transition back to Mr. Lambert's argument that his condition worsened. And as I mentioned before, you have to look and see that in July, although he was complaining of debilitating pain, there's treatment records sporadically throughout the record to his friend, his physical therapist, that he was doing tremendous amounts of walking. So those are inconsistent with Dr. Paul's July and August 2013 limitations that Mr. Lambert cannot work. I'd like to turn also to Mr. Lambert's subjective symptoms. The ALJ found, again, Mr. Lambert was very limited, but he was not disabled because he consistently responded well to treatment. And there wasn't really a 12-month period that went by where Mr. Lambert was- Is there any evidence that further treatment could alleviate his pain? There's no more surgeries he can have. The record ends in July of 2014, right as he's saying that his pain is recurring, so that there's nothing-the ALJ could just look at the record in front of him. If Mr. Lambert's condition indeed worsened, the proper remedy in that case would be for Mr. Lambert to reapply for Social Security benefits to cover the period when his condition worsened. And based on what was in Mr. Lambert's reply brief, that is exactly what he did. But based on the record- Where is that? What? You said that's exactly what he did. Mr. Lambert applied for disability benefits covering a subsequent period in which he alleged that his condition worsened. So where is that? What's the status of that? That I believe Mr. Lambert was given benefits for a subsequent period. But that's not before the court. This is not the amended onset date in this case. No, the amended onset date deals directly with Mr. Lambert's receipt of unemployment benefits. Mr. Lambert received-ultimately filed for disability several years later, and this is in the reply brief. We have not verified this with the agency, but he received benefits for a subsequent period. But the period before the court is just this 16-month period, and the ALJ needs to see evidence that he was disabled for at least 12 months. And short of that, there was no evidence to find that he was disabled. So if you have no further questions, I would just ask that the court affirm the district court's opinion. Thank you. Ms. Marcus, anything further? Sure. Just very briefly, with respect to the second application and an improvement and the inference that Mr. Lambert improved, I think that goes back to the opinion evidence and the fact that the administrative law judge here is speculating as to Mr. Lambert's current functioning because he has reviewed Dr. Paul's assessment and the functional capacity and determined on his own what Mr. Lambert is or isn't capable of doing that he is likely to improve in the future. And that shouldn't replace the objective evidence. The objective evidence at the time is that he's reporting ongoing pain. The X-ray is showing some degeneration. And the physical therapy assessment is putting him not at 15. I mean, if you look objectively, 15 sitting, 15 standing. But it says low to sedentary, and he's limited by pain. And that's something that the administrative law judge really erred in assessing well in this case is how Mr. Lambert is dealing with and functioning with his pain. Can I just ask quickly, counsel, on the second application, were benefits approved? Yes, Your Honor. Starting before or after the last insured? Is it SSI or is it disability insurance benefits? It's disability insurance benefits. So he used the data after the administrative law judge was unfavorable in this case, and he filed in the district court. It came out after the reply brief, and an amended complaint was filed in the district court. Thank you. Thank you, Your Honor. Thank you. Our thanks to all counsel. The case is taken under advisement, and that concludes today's calendar. Court is in recess. Thank you.